IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ARI BEN SWARTZ,

       Plaintiff,

vs.                                 CIVIL NO. 07-509 RB/CEG

NATIONAL AERONAUTICS AND SPACE
ADMINISTRATION (NASA)–JOHNSON
SPACE CENTER (JSC) WHITE SANDS
TEST FACILITY (WSTF), WASHINGTON GROUP
INTERNATIONAL INC. (WGII), RENE
RODRIGUEZ, RICHARD CUMMINGS,
and all other DOE DEFENDANTS,

       Defendants.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Washington Group International, Inc.'s, Rene Rodriguez's, and Richard Cumming's [hereinafter collectively referred to as "WGII"] Motion to Dismiss brought pursuant to FED. R. CIV. P. 12(b)(1), (5), and (6), filed July 23, 2007 (Doc. 29); on Plaintiff Ari Ben Swartz's Motion for Default Judgment, filed September 3, 2007 (Doc. 41); on WGII's Motion for Leave to File a Response to Plaintiff's Surreply, filed October 1, 2007 (Doc. 46); on Plaintiff's Motion to Dismiss All Defendant Motions for Non-Conformance to D.N.M.L.R. 7.4, filed October 9, 2007 (Doc. 49), and on the United States' request for dismissal (Doc. 42), filed September 5, 2007.

Defendants contend that Plaintiff lacks standing to bring his *qui tam* claims solely because he is proceeding pro se[1]; that his complaint also must be dismissed for lack of subject-matter jurisdiction or for failure to state a claim because he failed to follow statutory procedural sealing and

---

[1]Defendants do not discuss Plaintiff's standing based on his independent allegations of wrongful, retaliatory termination.

filing requirements; and that it should be dismissed for deficient service of process.

Plaintiff contends that default judgment should be entered against "the government and its officers" – apparently NASA and a Doe Defendant employed by NASA – for failure to respond to his complaint.  He further contends that WGII's Motion to file a response to his surreply, as well as its other motions, should be stricken for failure to comply with the local rules.  Having considered the parties' submissions, the record, and the applicable law, the Court will allow Swartz an opportunity to amend his complaint to properly name the plaintiffs and defendants and to clarify whether he is attempting to state a claim against the United States under some theory other than the *qui tam* action.[2]  The Court will also require Swartz to establish that he has produced all evidence and information in his possession regarding the *qui tam* action to the United States.  The Court has sealed the existing complaint pending further action by the parties in accordance with this Order.  The Court will deny Plaintiff's motion for default judgment and the Government's request to dismiss the complaint.

## I.       Procedural and factual background.

Swartz is a former WGII employee who worked as a quality-assurance engineer at the NASA Johnson Space Center White Sands Test Facility.  He seeks monetary recovery as a *qui tam* relator under the federal False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33.  *See* Compl. at 2 (alleging federal jurisdiction under § 3730).  He also appears to attempt to assert a tort claim against NASA and its agents and against WGII and its employees for an alleged conspiracy and actions that resulted in his allegedly wrongful and retaliatory termination.  Swartz contends that "NASA and the

---

[2]  "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her; and, what specific legal right the plaintiff believes the defendant violated. . . . [T]hese are, very basically put, the elements that enable the legal system to get weaving-permitting the defendant sufficient notice to begin preparing its defense and the court sufficient clarity to adjudicate the merits."  *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

WGII Defendants defrauded the government and wasted government monies." *Id.* He also contends that WGII "terminated my employment to hide the fraudulent actions by WGII and NASA" at NASA's site managers' behest; that NASA ultimately eliminated his duties without changing his contract; that NASA "obstructed me from performing my job" and "punish[ed] me for exposing flaws they did not want exposed or addressed" by making "negative contract evaluations after my reporting evidence of NASA inadequacies;" and that NASA and WGII restricted him from doing his job and from disagreeing with NASA. *Id.* at 2, 6-7.

Plaintiff filed his complaint, along with a motion to proceed *in forma pauperis* ("IFP"), on May 22, 2007. *See* Doc. 1. He filed two other lawsuits against the same defendants that same day. *See* No. 07cv510 (suit naming NASA, WGII, and other defendants and alleging tort claims for exposure to toxic propellants and failure to provide a safe work place); No. 07cv511 (suit naming NASA and Doe defendants and alleging illegal hiring practices). On June 4, 2007 the magistrate judge assigned to the case at bar ordered the three cases to be consolidated for discovery purposes. *See* No. 07cv509, Doc. 3. And on June 14, 2007 the magistrate judge denied Plaintiff's motion to proceed IFP. *See* Doc. 4. Plaintiff filed a motion for appointment of counsel and a motion to have the U.S. Marshal serve the summonses and complaint on June 14. *See* Docs. 5, 6. The Court denied these motions on June 25. *See* Doc. 8. On June 29, the Court issued six summonses. *See* Doc. 12. Plaintiff served the summonses and complaint on the U.S. Attorney, the NASA agency and administrators, and the WGII defendants by certified mail between July 2 and July 16. *See* Docs. 18-28, 39. WGII filed a motion to dismiss in lieu of an answer on July 23. *See* Doc. 29. The Government has not yet elected whether "to intervene and proceed with the action,"*see* § 3730(b)(2), and insofar as the complaint may allege a tort action against the Government or its employees, has not filed an answer.

## II.   Legal standards and relevant statutes.

A motion to dismiss should be granted

> if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the non-moving party, the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.' " *Macarthur v. San Juan County*, 497 F.3d 1057, 2007 WL 2045456, at *5, 2007 U.S.App. LEXIS 17008, at *16 (10th Cir. 2007) (*quoting Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1968-69, 167 L.Ed.2d 929 (2007)).  As we have explained this new standard for reviewing a motion to dismiss, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

*Anderson v. Suiters*, 499 F.3d 1228, 1232 (10th Cir. 2007) (emphasis in original).  Because Swartz proceeds pro se, the Court liberally construes his complaint.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  "[T]he [pro se] plaintiff whose factual allegations are close to stating a claim but are missing some important element that may not have occurred to him, should be allowed to amend his complaint."  *Id.*

The Attorney General or a private person may bring an FCA action.  *See* § 3730(a),(b).  A private party brings the action "for the person and for the United States Government."  § 3730(b)(1).  "The action shall be brought in the name of the Government."  *Id.*  "A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule [4(i)] of the Federal Rules of Civil Procedure."  Section 3730(b)(2).  "The complaint shall be filed *in camera*, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders.  The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information."  *Id.*  If the Government intervenes, "the action shall be conducted by the Government," § 3730(b)(4)(A), but if it does not intervene, "the person bringing

4

the action shall have the right to conduct the action," § 3730(b)(4)(B).  Section 3730(c) sets forth the "[r]ights of the parties to *qui tam* actions."  *See* 31 U.S.C. § 3730(c).

The Court will address the issues WGII and the Government contend are related to subject-matter jurisdiction first.  "Questions of jurisdiction, of course, should be given priority – since if there is no jurisdiction there is no authority to sit in judgment of anything else.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 778-79 (2000) (internal quotation marks and citation omitted).

## III.    Analysis.

### A.    Standing.

"Standing is a jurisdictional issue . . . ."  *Wilson v. Glenwood Intermountain Prop., Inc.*, 98 F.3d 590, 592-93 (10th Cir. 1996).  The Supreme Court has held that private *qui tam* plaintiffs have Article III standing because they sue as partial assignees of the United States' claims.  *See Vt. Agency of Natural Res.*, 529 U.S. at 773 ("The FCA can reasonably be regarded as affecting a partial assignment of the Government's damages claim.").  "It is beyond doubt that the [*qui tam*] complaint asserts an injury to the United States – both the injury to its sovereignty arising from violation of its laws . . . and the proprietary injury resulting from the alleged fraud."  *Id.,* 529 U.S. at 771.  "[T]he United States' injury in fact suffices to confer standing on [the qui tam relator.]"  *Id.,* 529 U.S. at 774.  Beyond that, however, the FCA "gives the relator himself an interest *in the lawsuit*, and not merely the right to retain a fee out of the recovery[,] . . . [and] gives the relator 'the right to continue as a party to the action' even when the Government itself has assumed 'primary responsibility' for prosecuting it."  *Vt. Agency of Natural Res.*, 529 U.S. at 772 (emphasis in original).  Thus, the "*qui tam* relator is, in effect, suing as a partial assignee of the United States" and not as its agent.  *See id.,*

5

529 U.S. at 772, 773 n.4.

Despite the Supreme Court's clear holding that "it leaves no room for doubt that a *qui tam* relator under the FCA has Article III standing," *id.*, 529 U.S. at 778, WGII contends that Swartz never achieved or must be deprived of that standing because he is representing himself, citing a case from the Seventh Circuit that relied on an opinion written in 1951 holding that a "pro se relator cannot prosecute a qui tam action, because he is acting as an attorney for the government." *United States ex rel. Lu v. Ou*, 368 F.3d 773, 775 (7th Cir. 2004) (citing *United States v. Onan*, 190 F.2d 1 (8th Cir. 1951)).

None of the cases WGII cites, including *Lu*, however, holds, states, or implies that a *qui tam* relator cannot achieve (or loses) Article III standing to bring the action if he represents himself. Instead, as discussed below, some courts have prohibited a pro se plaintiff from bringing a *qui tam* suit based on the principle that a pro se party can represent only himself, *see* 28 U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own cases personally or by counsel. . . . "); *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 202 (1993) ("the lower courts have uniformly held that 28 U.S.C. § 1654 . . . does not allow corporations, partnerships, or associations to appear in federal court otherwise than by licensed counsel"); on characterizations about the status of the United States and its relationship to the relator in a private *qui tam* suit; and on a hypothetically unfair *res judicata* effect of the private litigation on the Government's rights.

The oldest case cited by WGII states that, although the FCA (in its former codification)

> provides that such suit 'may be brought and carried on by any person,' we do not
> think that Congress could have intended to authorize a layman to carry on such suit
> as attorney for the United States but must have had in mind that such a suit would
> be carried on in accordance with the established procedure which requires that only
> one licensed to practice law may conduct proceedings in court for anyone other than
> himself.

*United States v. Onan*, 190 F.2d at 6.[3]

At the time *Onan* was written, the FCA had not been construed as providing for a partial assignment of the United States' damages claim to a relator.  Further, the Government at that time did not have the statutory right to request an extension of the sixty-day period in which to intervene as a matter of right in a private *qui tam* action, nor did it have the statutory right to request intervention at any later stage of the litigation.  *See United States ex rel. Killingsworth v. Northrop Corp.*, 25 F.3d 715, 721 (9th Cir. 1994) (discussing the 1986 amendments to the FCA).

Almost thirty years later, a California district court relied on *Onan* to foreclose a relator from appearing pro se.  *See United States ex rel. Schwartz v. TRW, Inc.*, 118 F. Supp. 2d 991 (C.D. Cal. 2000) (stating that, "[t]he nature of a *qui tam* action is that the relator . . . represents the United States. . . . The private individual brings suit to recover money on behalf of the government. . . . Despite the fact that the relator is entitled to share in the recovery, in *qui tam* actions, the government remains at all times the 'real party in interest.'").

Building on these two cases, the court in *United States ex rel. Rockefeller v. Westinghouse Elec. Co.*, 274 F. Supp. 2d 10 (D.D.C. 2003), *aff'd*, 2004 WL 180264 (D.C. Cir. Jan 21, 2004), acknowledged (in a case where the pro se plaintiff conceded that he could not represent the interests of the United States) that:

> [i]t is well understood that the FCA partially assigns the United States' damage claims to a relator.  *See Vt. Agency of Natural Res.*, 529 U.S. at 773, 774 n. 4. Generally, a partial assignment gives the assignee the rights to the part of the claim

---

[3] WGII cites *Safir v. Blackwell*, 579 F.2d 742, 745 n.4 (2d Cir. 1978), as dictum in accord with *Onan*.  But in *Safir*, the Court specifically noted that "Defendants *have not raised* the claim that, as held in *United States v. Onan*, . . . a litigant cannot prosecute a *qui tam* action under [the FCA] *pro se.  If we assume that such a claim would be well founded*, the remedy would not be outright dismissal but a direction that the action be dismissed unless an attorney is retained."  *Id.* (emphasis added).  Thus, *Safir* did not express an opinion on whether it agreed with *Onan*, but it made it clear that the issue whether a relator could appear pro se was not jurisdictional.

> that is assigned, as if the part assigned is a separate right. *See* Restatement (Second) of Contracts § 326 (1981). Accordingly, a partial assignee can generally sue to recover his or her part of the claim. *See* Restatement (Second) of Contracts § 326 cmt. b.

*Id.*, 274 F. Supp. 2d at 17. The court held, however, that "[a]n FCA claim remains the interest of the United States, even if it chooses not to intervene in an action brought by a relator" and that the relator could not "bifurcate an FCA claim so as to permit him as a relator to pursue his own independent claim that is totally separate from the United States' interest in that claim." *Id.*, 274 F. Supp. 2d at 18-19. The court opined that allowing the pro se relator to pursue *qui tam* claims was not consistent with the purpose of the FCA because the pro se plaintiff's representation was "inadequate to protect the interests of the United States." *Id.*, 274 F. Supp. 2d at 17.

The Supreme Court's holding in *Vermont Agency of Natural Resources* that the FCA statute grants to the private *qui tam* relator a partial assignment of the United States' right of recovery and that he sues as an assignee and not as an agent of the United States undercuts WGII's assertion that a relator asserts only "the Government's, not his own, claim for recovery." *See* WGII's Resp. to Swartz's Surreply (Doc. 33 at 3). The most recent case to analyze the issue that WGII cited is *Lu.* Agreeing with the holding in *Onan*, and failing to recognize that the relator sues as an assignee, the *Lu* court stated:

> [t]he relator is not technically the government's lawyer; but the same policy that forbids litigants, whether they are corporations, or other organizations, or individuals, such as members of a class or shareholders, to be represented by nonlawyers, is applicable to qui tam suits. Lu is suing not on his own behalf, but on behalf of the government.

*Lu*, 368 F.3d at 775. The *Lu* court then focused on the fact that the Government does not hire the relator to sue on its behalf (thereby implying that it has no choice in the matter) and expressed its concern that the Government could be unfairly bound by the relator's actions, citing a case holding

8

that *parties* are bound by their own legal representatives.  *See Lu*, 368 F.3d at 775.

Thus, in all of the cases holding that a pro se relator cannot maintain a *qui tam* suit cited by WGII or discovered during the Court's independent research, the underlying rationale is basically threefold: (1) the United States remains at all times the "real party in interest," regardless of whether it intervenes, such that the relator is suing only for, as the legal representative of, the Government; (2) pro se plaintiffs may not represent the interests of another; and/or (3) the pro se relator's actions may possibly prejudice the rights of the United States.  *See Lu*, 368 F.3d at 775.

As the *Lu* court noted, however, the Tenth Circuit has long taken a different view regarding the United States' status in *qui tam* suits.  In *United States ex rel. Petrofsky v. Van Cott, Bagley, Cornwall, McCarthy*, 588 F.2d 1327 (10th Cir. 1978) (per curiam), *which was an action brought by a pro se relator, see* 588 F.2d at 1328, the Tenth Circuit held that, even though the Government may initially be named as a party in a *qui tam* suit brought under the former codification of the FCA, once it has declined to participate, "proceeding in its name was merely a statutory formality" and it is not a true party.  *Id.,* 588 F.2d at 1329.  Because the United States was not a "party" to the *qui tam* action in *Petrofsky*, the pro se relator was not entitled to the extended time limitations for appeal that are accorded to the Government by statute, but, instead, was limited to the regular 30-day appeal period accorded to all private litigants.  *See id.*  This holding implies, therefore, that the private *qui tam* relator is not actually representing the Government and does not stand in its shoes as an agent but is, rather, attempting to simply establish an injury that will result in the relator receiving a monetary benefit under the FCA.

In an unpublished opinion issued in 2005, the Tenth Circuit followed this precedent in resolving whether, under the amendments to the FCA since *Petrofsky*, the United States was a party to the *qui tam* action if it had declined to join the suit, such that the time limitations regarding

notices of appeal would be extended to sixty days.  *See Shaw v. AAA Engineering & Drafting, Inc.*, 138 Fed. Appx. 62, 2005 WL 1349964 (10th Cir. Jun. 8, 2005).  The panel held that it was bound by *Petrofsky*.  *Id.* at *75.  The Tenth Circuit holds, therefore, that if the United States does not specifically join a *qui tam* action within the 60-day statutory time period, it is not a party to the suit and the relator does not stand in its shoes as an agent.  This holding is consistent with the FCA statute, which provides that, if the United States later changes it mind, it may move to intervene.  *See* § 3730(c)(3).  And if the United States *does* intervene, it is represented by the Attorney General, and not the pro se relator.

The conclusion that private *qui tam* relators do not actually represent the United States is further buttressed by a recent United States Supreme Court opinion discussing the difference between FCA actions brought by relators and those brought by the Government.

> The statute thus draws a sharp distinction between actions brought by the Attorney General under § 3730(a) and actions brought by a private person under § 3730(b).  An action brought by a private person does not become one brought by the Government just because the Government intervenes and elects to "proceed with the action."  Section 3730 elsewhere refers to the Government's "proceed[ing] with an action brought by a person under subsection (b)"-which makes crystal clear the distinction between actions brought by the Government and actions brought by a relator where the Government intervenes but does not oust the relator.
>
> . . . . [A]n action originally brought by a private person, which the Attorney General has joined, becomes an action brought by the Attorney General once the private person has been determined to lack the jurisdictional prerequisites for suit.

*Rockwell Int'l Corp. v. United States*, 127 S. Ct. 1397, 1411 (2007).  If a private *qui tam* suit is not an action "brought by the Government," even when it intervenes, until the private relator is ousted, then surely Swartz cannot be said to be representing the United States.

The Court also concludes that a private pro se *qui tam* relator cannot unfairly prejudice the rights of the Government.  When it chooses not to intervene, the Government may require the parties

to serve it with all papers filed and depositions taken in the proceedings so that it may keep abreast of the status of the case.  *See* § 3730(c)(3).  If it does not intervene, the United States maintains a statutory right to keep a private *qui tam* action from being dismissed – and, therefore, from being settled – without its approval.  *See* § 3730(b)(1) ("The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."), *Searcy v. Philips Elecs. N. Am. Corp.*, 117 F.3d 154, 160 (5th Cir. 1997) (holding, in case where the Government did not intervene, that the Government's authority to prevent dismissals based on unapproved settlements between the *qui tam* relator and the defendant that were not in the best interests of the United States is clear).  Further, the relator's private action does not affect the Government's right to separately bring alternative, administrative, or criminal actions against the defendants.  *See* § 3730(c)(5).

If the Government seeks an alternative remedy instead of intervening in the *qui tam* relator's suit, the FCA provides that "any finding of fact or conclusion of law made in such other proceeding that has become final shall be conclusive on all parties" to the private *qui tam* action, *id.*, which implicitly forecloses the private suit's ability to have a *res judicata* effect on the Government's rights.[4]  Notably, if the United States decides to intervene, it statutorily is not bound by the relator's

---

[4] In federal court, "[t]he doctrine of res judicata, or claim preclusion, . . . prevent[s] a *party* from relitigating a legal claim that was or could have been the subject of a previously issued final judgment.  Under Tenth Circuit law, claim preclusion applies when three elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of the parties in the two suits; and (3) identity of the cause of action in both suits. If these requirements are met, res judicata is appropriate unless the party seeking to avoid preclusion did not have a 'full and fair opportunity' to litigate the claim in the prior suit."  *MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) (emphasis added) (citations omitted); *see Arizona v. California*, 530 U.S. 392, 414 (2000) (holding that, under federal law, settlements have claim-preclusive effect between the parties to the settlement, "[b]ut settlements ordinarily occasion no *issue preclusion* . . . unless it is clear ... that the parties intend their agreement to have such an effect") (emphasis in original).  If the Government is not a party because it has declined to participate in the suit, *res judicata* simply does not apply.  Further, by statute, when a relator brings a *qui tam* action, the Government may also "bring a related action based on the facts underlying the pending action." § 3730(b)(5).  The Government, of course, could not obtain a double recovery for the same injury.  *See Bollinger v. Rheem Mfg. Co.*, 381 F.2d 182, 185 (10th Cir. 1967) (noting "the rule that a plaintiff cannot twice recover for the same damages").

actions, *see* § 3730(c)(1), and may dismiss or settle the action notwithstanding the relator's objections, *see* § 3730(c)(2)(A) & (B).  These provisions demonstrate that the relator is not acting as the United States' agent.

There are other statutory provisions indicating that a *qui tam* relator may proceed pro se. First, the statute specifically provides that "[a] person may bring a civil action for a violation of section 3729 for the person and for the United States Government" without conditioning or modifying "person" with the words "represented by an attorney."  The Supreme Court has before refused to add "words of exception or qualification" to the former codification of the FCA to make it more difficult for the private *qui tam* relator to proceed with suit.  *See United States ex. rel Marcus v. Hess*, 317 U.S. 537, 546 & n.9 (1943) (stating, "[t]here is of course no reason why Congress could not, if it had chosen to do so, have provided specifically" for a rule that would foreclose the right of the relator to bring suit).

In addition, Congress has added several provisions enabling either the Government or the defendant to request that the court limit the participation of a relator who "interfere[s] with or unduly delay[s] the Government's prosecution of the case, or would be repetitious, irrelevant, or for purposes of harassment . . . ." § 3730(c)(2)(C); *see* § 3730(c)(2)(D) (providing that court may limit a relator's participation "[u]pon a showing by the defendant that unrestricted participation during the course of the litigation by the person initiating the action would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense . . . .").  These provisions appear to be tailor-made for the pro se relator who may have difficulty in wading through complex litigation or who is principally motivated in bringing suit because he has a bone to pick with the *qui tam*

12

defendant.   Because the FCA provides pervasive protection to the Government against any prejudicial effect of the relator's actions upon the Government and allows the Government to take over the action at any time for good cause, the Court concludes there is no reason to speculate that a pro se relator may unfairly prejudice the Government's rights.

The Court concludes that, although the United States clearly has an interest in a private *qui tam* suit, the private relator sues as an assignee and does not actually represent the United States in a *qui tam* action and that the relator may, therefore, proceed *pro se*.   Contrary to WGII's contention that "[e]very court that has considered the issue has held that 'a pro se relator cannot prosecute a *qui tam* action,'" WGII's Mot. (Doc. 29) at 5, the *Rockefeller* court noted that the District Court for the Eastern District of Washington had allowed a relator to proceed pro se based on the rationale that the relator was suing to recover his part of the assigned claim.   *See Rockefeller*, 274 F. Supp. 2d at 17 n.8.   As that court noted,

> the FCA meticulously addresses the procedure by which a *qui tam* plaintiff may bring an action.   Congress easily could have inserted a provision requiring a *qui tam* plaintiff to retain counsel.   Congress even could have forsaken *qui tam* plaintiff standing altogether, deciding instead that only the Attorney General can properly bring an FCA claim on behalf of the Government.   Congress did neither of these. *Qui tam* plaintiffs are accorded standing under the FCA, and their participation is described in such a way that it is easily interpreted as an assignment of a fraud claim by the Government to a private plaintiff.   The Court finds the analysis in *Kelly* most applicable to the instant case.   *Kelly* directly addresses a *qui tam* plaintiff's standing, and holds the basis for that standing is the assignment of a fraud claim.   That characterization is critical because a corporation may not assign its claim to a lay person proceeding pro se.   *Jones*, 722 F.2d at 23.   Also, case law and statutes prohibit a corporation's claims from being pursued by a pro se individual.   No such bar exists for the Government's claims. . . .   Essentially, the claim becomes the assignee's claim.   An assignee may litigate his own claim if he wishes.

*United States ex rel. Trice v. Westinghouse Elec. Corp*, No. CS-96-0171-WFN, 2000 WL 34024248 at *10-*11 (E.D. Wa. 2000).

Because (1) the FCA does not prohibit pro se relator status; (2) Swartz has Article III

standing based on the FCA and the partial assignment of the United States' potential claims and his

pro se status does not deprive him of that standing; (3) Swartz is not representing the Government

in his private *qui tam* action, and (4) there are significant statutory protections designed to prevent

any unfair prejudice to the Government's rights, the Court concludes that Swartz may proceed pro

se and that the action should not be dismissed on that basis.

### B.  Effect of failure to fully comply with statutory procedure.

WGII next contends that this Court lacks jurisdiction to entertain Swartz's suit because

Swartz failed to fully comply with the sealing and filing requirements found in § 3730(b)(2)[5].  *See*

WGII's Mot. (Doc. 29) at 5.  Specifically, although Swartz mailed a copy of the complaint to the

U.S. Attorney on July 2, 2007, *see* Doc. 39, he failed to file his complaint under seal and

contemporaneously mailed the complaint to the WGII defendants before waiting sixty days and

receiving a court order authorizing him to do so.  *See* § 3730(b)(2).

As explained below, the Court concludes that these procedural requirements are not

jurisdictional and that, under the circumstances of this case, his complaint should not be dismissed

at this juncture.  Section 3730(e)[6] speaks to "the power of a particular court" as well as to "the

---

[5]In the alternative, WGII asserts that Swartz's suit must be dismissed for failure to state a claim because he has not complied with the procedural requirements.

[6] § 3730(e) provides:

Certain actions barred.--(1) No court shall have jurisdiction over an action brought by a former or present member of the armed forces under subsection (b) of this section against a member of the armed forces arising out of such person's service in the armed forces.

(2)(A) No court shall have jurisdiction over an action brought under subsection (b) against a Member of Congress, a member of the judiciary, or a senior executive branch official if the action is based on evidence or information known to the Government when the action was brought.

substantive rights of the parties," *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S.

939, 951 (1997), and "governs the district court's subject matter jurisdiction" in FCA actions, *see*

*United States ex rel. Schwartz v. Coastal Healthcare Group, Inc.*, 2000 WL 1595976, *2 (10th Cir.

2000).

> The jurisdiction-removing provision here does not say "no court shall have *jurisdiction* under this section," but rather "no court shall have jurisdiction *over an action* under this section." That is surely the most natural way to achieve the desired result of eliminating jurisdiction over a category of False Claims Act actions- . . . .

*Rockwell Int'l Corp.*, 127 S. Ct. at 1406 (emphasis in original).  Accordingly, if Congress had

wanted failure to follow procedural requirements in § 3730(b)(2) to result in a jurisdictional bar,

"the most natural way to achieve the desired result of eliminating jurisdiction" would be for it

simply to say so in the section addressing subject-matter jurisdiction.

Section 3730(b)(2) mandates the procedures a private relator must follow by using the word

"shall"; § 3730(b)(4) similarly mandates the procedures the Government must follow after having

---

(B) For purposes of this paragraph, "senior executive branch official" means any officer or employee listed in paragraphs (1) through (8) of section 101(f) of the Ethics in Government Act of 1978 (5 U.S.C. App.).

(3) In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.

(4)(A) No court shall have jurisdiction over an action under this section based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

(B) For purposes of this paragraph, "original source" means an individual who has direct and independent knowledge of the information on which the allegations are based and has voluntarily provided the information to the Government before filing an action under this section which is based on the information.

been served with a copy of the complaint by using the word "shall."  Neither section specifies the

consequences for failure to comply with these procedures.  The Fourth Circuit has held that the

> use of the word "shall" is insufficient evidence of a congressional intention that
> section 3730(b)(4) serve as a jurisdictional requirement upon the government in *qui
> tam* actions, and finding nothing in the FCA's history or purpose suggesting that
> Congress did intend a jurisdictional requirement, we are constrained to hold that the
> government's failure to comply with section 3730(b)(4) does not bar its further
> prosecution of a *qui tam* action.

*United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1344, 1346-47 (4th Cir. 1994)

(noting that a reasonable and less extreme sanction is to order compliance with the procedural

mandates of § 3730).  WGII points to nothing in the FCA's language or legislative history indicating

Congress's desire to eliminate a court's jurisdiction for a relator's failure to follow procedural

mandates, and several courts have held that the requirements of § 3730(b)(2) are not jurisdictional.

*See, e.g., United States ex rel. Lujan v. Hughes Aircraft Co.*, 67 F.3d 242, 245 (9th Cir. 1995);

*Castenson v. City of Harcourt*, 86 F. Supp. 2d 866, 878 (N. D. Iowa 2000) ("these requirements are

more in the nature of non-jurisdictional procedural preconditions"); *United States ex rel. Mikes v.

Straus*, 931 F. Supp. 248 (S.D.N.Y. 1996) (accord).

    The question of what sanction the Court should impose for failure to follow procedural

mandates is still before the Court, however.  The Second Circuit has held that failure to comply with

§ 3730(b)'s threshold requirements warrants dismissal of the *qui tam* complaint with prejudice.  *See

United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 1000 (2d Cir. 1995).

    After also examining the FCA's legislative history, the Ninth Circuit came to a different

conclusion.

> By providing for the seal provision, Congress intended to strike a balance
> between "the purposes of *qui tam* actions [and] ... law enforcement needs [.]" S.Rep.
> No. 345, 99th Cong., 2d Sess. 24, reprinted in 1986 U.S.C.C.A.N. 5266, 5289.  The
> purpose of *qui tam* actions is to encourage more private false claims litigation. *See*

*id.*, reprinted in 1986 U.S.C.C.A.N. at 5288.   The other side of the balance recognizes

> the need to allow the Government an adequate opportunity to fully evaluate the private enforcement suit and determine both if that suit involves matters the Government is already investigating and whether it is in the Government's interest to intervene and take over the civil action.  *Id.*, reprinted in 1986 U.S.C.C.A.N. at 5289. The seal provision provides an appropriate balance between these two purposes by allowing the *qui tam* relator to start the judicial wheels in motion and protect his litigative rights, while allowing the government the opportunity to study and evaluate the relator's information for possible intervention in the *qui tam* action or in relation to an overlapping criminal investigation.  *Id.*

When the seal provisions are violated, this balance cannot be disregarded. The requirements of § 3730(b)(2) are not jurisdictional, and violation of those requirements does not per se require dismissal of the *qui tam* complaint.  *See United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 1000 (2d Cir. 1995) (expressing reluctance to rule that the requirements of § 3730(b)(2) are jurisdictional).  Rather, the district court must keep in mind both sides of the balance when constructing a sanction for a violation of the seal provision.  In this case, when the district court sanctioned Lujan for violating the seal provision, it failed to consider this balance and instead concluded *ipso facto* that once a violation was found, dismissal was appropriate.  Several factors should have given the district court reason to pause before deciding dismissal was appropriate.

First, the district court failed to consider whether the Government was actually harmed by Lujan's disclosure.  Courts that have previously addressed this issue and found dismissal appropriate have relied, at least in part, on the irreparable harm to the government caused by the complete failure to abide by any of the seal provisions, including failure to serve the government with a copy of the complaint. In *Pilon*, the court found that the violation "incurably frustrated the statutory purposes underlying [the seal] requirements [.]"  *Id.* at 996.  Similarly, in *Erickson ex rel. United States v. American Inst. of Bio. Sciences*, 716 F.Supp. 908 (E.D. Va. 1989), the court rested its holding on its finding that "Erickson's failure to comply with the filing and service provisions *irreversibly* frustrates the congressional goals underlying those provisions."  *Id.* at 912 (emphasis added).

The mere possibility that the Government might have been harmed by disclosure is not alone enough reason to justify dismissal of the entire action.  The district court should have assessed whether and to what extent the government was harmed before sanctioning Lujan with dismissal.

*Lujan*, 67 F.3d at 245; *see United States ex rel. Kusner v. Osteopathic Med. Ctr. of Phila.*, 1996 WL

287259, at *5 (E.D. Pa. May 30, 1996) (stating that there is "nothing in the language of the [FCA] which requires that a *qui tam* complaint be dismissed with prejudice if the confidentiality requirements are violated").   The District of New Mexico has followed the balancing approach described in *Lujan*, instead of holding that failure to follow the filing and sealing requirements mandates dismissal with prejudice.  *See United States, ex rel. Downy v. Corning, Inc.*, 118 F. Supp. 2d 1160, 1163 (D.N.M. 2000), *overruled on other grounds by United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726 (10th Cir. 2006) (holding that "the tolling provision of § 3731(b) was not intended to apply to private *qui tam* suits.  Rather, it was intended to provide the Department of Justice with 'a little more flexibility in bringing some cases that otherwise would be barred'").  The Court concludes that the severe sanction of dismissal "should be reserved for cases involving great harm to the interest promoted by the seal provision," which is the Government's interest, and not that of the Defendants.  *Downy*, 118 F. Supp. 2d at 1163.

As noted above, Swartz filed the complaint in May 2007.  Swartz's complaint indicates that, not only did Swartz contact NASA regarding audits that had not been performed and employees that were hired with no assigned duties before he filed the *qui tam* action, it also states that he "provided detailed information to the US Congress and the NASA Office of the Inspector General on March 9, 2007 on the reprimands by WGII for disclosure of fraudulent activities discovered in my professional activities."  Complaint at 3.  Swartz properly served the Government with the complaint under Rule 4(i), but the Government has not yet informed Swartz or the Court whether it will intervene.

WGII has long been aware of Swartz's complaints that it was defrauding the government and has not yet filed an answer to the complaint.  There is no concern that WGII's early service tipped it off, to the Government's prejudice.  Under the circumstances presented in this case, where the

18

United States apparently had several months to investigate and evaluate Swartz's claims before he filed the *qui tam* action, where the underlying allegations have been a matter of common knowledge between the Government and the Defendants, and where the Government has been properly served with the complaint, the Court concludes that no prejudice has occurred to the Government by Swartz's failure to seal the case and await the Court's order before serving it on the Defendants.

The Court also concludes that Swartz did not act in bad faith when he failed to seal the complaint.  Ignorance of how to accomplish procedural tasks is not an excuse for procedural deficiencies, however, and Swartz is warned that he must follow all applicable statutes and rules or risk dismissal of the action[7].  Because of the confusion caused by a number of factors in this case, the Court will seal the complaint and grant the United States an extension in which to intervene as a matter of right, if it so desires.

**C.      The Government's request for dismissal.**

Although the United States (1) concedes that it is not a party-plaintiff to the action, (2) contends that it cannot be a defendant (but does not address Swartz's allegations of conspiracy to cause wrongful discharge) and (3) while it has not formally moved to dismiss this action, it requested dismissal in its response to Swartz's motion for default judgment.  *See* Doc. 42 at 1, 4. When the Government moves to dismiss a private *qui tam* action, the court should determine whether it has identified "a valid government purpose" for doing so and established "a rational relation between dismissal and accomplishment of the purpose."  *Ridenour v. Kaiser-Hill Co., L.L.C.*, 397 F.3d 925, 936 (10th Cir. 2005) (internal quotation marks omitted).  "If the Government satisfies this two-step test, the burden switches to the relator to demonstrate that dismissal is

---

[7] Swartz is also cautioned to comply with the formatting and length provisions for briefs.  *See* D.N.M.L.R. 7.7.

fraudulent, arbitrary and capricious, or illegal." *Id.* (internal quotation marks omitted).

In *Ridenour*, the Tenth Circuit agreed that "protecting classified information from disclosure and the timely closing of the contaminated Rocky Flats facility are valid governmental purposes supporting its motion to dismiss the *qui tam* action . . . [and that the] action bears a rational relation to the stated objectives." *Id.* (footnote omitted).  In the case at bar, in contrast, the Government does not identify a substantive purpose for dismissing the action, asserting only that, as a matter of law, failure to follow the sealing requirements and proceeding pro se results in Swartz's action being "a nullity" that must be dismissed.[8]  Doc. 42 at 4.  It then contends that the dismissal should be without prejudice as to the United States because the Attorney General has not given its written consent to the dismissal.  *See id.*  The Court has already explained, *supra*, why dismissal is not mandated on either basis.

Although it does not directly discuss prejudice, the United States complains that Swartz has not served on it "a written disclosure of substantially all material evidence and information" he possesses regarding the FCA claims and contends that it, therefore, has not been "provided the opportunity to exercise its right to intervene."  Doc. 42 at 1 n.1.  It appears from the complaint, however, that Swartz's evidence on the FCA claim mainly consists of his testimony, which is summarized in the complaint; ASME code requirements that have been previously pointed out to NASA; Swartz's employment contract; Swartz's investigative reports that have already been submitted to NASA; the "detailed information" Swartz submitted to the NASA Office of the Inspector General in March 2007; information about WGII's Safety Officer (that the Government

---

[8] The Government is not required to intervene with a showing of good cause before moving to dismiss a private *qui tam* action under § 3730(c)(2)(A), even though it is not a party to the suit, because the statute does not require it.  *See Ridenour*, 397 F.3d at 934-35.

apparently ultimately pays for) who reportedly has no assigned duties; and audit and/or welding reports given to NASA.  It is apparent that much of this evidence and testimony has already been provided to the Government through its agency or officers.  And the Court notes that Swartz has moved for an order allowing him to gain access to his computer files at the NASA facility so that he can obtain documents and other evidence he contends are related to his claims.  The Court concludes that the Government has been provided with sufficient information and time to investigate and determine whether it desires to intervene, but will ensure that Swartz has fully complied with § 3730(b) before allowing the litigation to proceed.

Further, a "nullity" is defined as "something that is legally void."  Bryan A. Garner, A DICTIONARY OF MODERN LEGAL USAGE 383 (1987).  If a complaint is determined to be "void," it is treated as though it never legally existed.  *Cf. Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1052, 1055 (10th Cir. 1994) (noting that, after the appellate "court found that the plaintiffs did not have standing to sue, the district court's preliminary injunction order became void, as if it had never existed").  As stated, *supra*, the United States has not been named, and has not intervened, as a party-plaintiff in this private suit.  If Swartz's complaint were, indeed, null, void, or nonexistent, it is difficult to comprehend how it could be effective for any purpose against the United States, a non-party.  And even if Swartz were ousted as a plaintiff as to the *qui tam* claims and they were dismissed, the Government is statutorily entitled to bring an FCA suit itself under § 3730(a), or other administrative or criminal actions.  *See, e.g.*, § 3730(c)(5) (giving the Government the right to pursue its claim through "any alternative remedy available," notwithstanding a private *qui tam* action); 31 U.S.C. § 3731 (providing that convicted defendants in criminal proceedings charging fraud or false statements are estopped "from denying the essential elements of the offense in any action which involves the same transaction as in the criminal

proceeding and which is brought under [§ 3730(a) or (b)]").  If the United States desires to maintain the private FCA action brought by Swartz, however, it must intervene before Swartz is ousted as a plaintiff.  *See Rockwell Int'l Corp.*, 127 S. Ct. at 1411.  Further, it is disingenuous for the United States to urge dismissal of the action in its brief but, in the next breath, to contend that it has not consented to the dismissal of the complaint.

Because this case has been plagued by inadequacies on all sides, the Court will ensure that all evidence in Swartz's possession has been provided to the Government and will extend the Government's opportunity to intervene without having to show good cause.  Swartz shall either submit to the Government all evidence in his possession related to the FCA claims that has not yet been submitted or inform the Government that he possesses no other evidence, and shall file an affidavit showing compliance.

### D.      Swartz's request for default judgment.

In that Swartz's complaint is ambiguous regarding whether he is attempting to bring additional tort claims against NASA employees, and because his motion for default judgment was filed before the sixty-day time period after service had been effected under Rule 4(i), the Court will not grant default judgment at this juncture.  Swartz shall have ten days to amend his complaint to properly name the parties in the style of the case, and to include separate counts and requests for relief for each separate claim, if any.

### E.      Swartz's request for denial of motions for failure to follow notice rules.

The Court will also deny Swartz's motion to deny all of Defendants' motions solely for failure to follow the three-day-notice requirement set forth in Local Rule 7.4.  Counsel is reminded that it must follow all local rules.

### F.      WGII's request for dismissal for failure to properly serve WGII.

In a footnote of its brief, WGII urges dismissal of the complaint under Rule 12(b)(5) for deficient service of process, contending that service by certified mail is not sufficient to effect service under Rule 4. *See* WGII's Mot. at 2 n. 1. Swartz responds that Rule 4(e)(1) provides for service pursuant to the law of the state in which the district court resides, and that New Mexico allows service of summonses and complaints by certified mail. *See* N.M.R.A. 1-004(F)(1)(b) & G(3). WGII does not respond to Swartz's argument, and the Court concludes that the WGII defendants were effectively served.

**NOW, THEREFORE, IT IS ORDERED AS FOLLOWS:**

1.      WGII's Motion to Dismiss (Doc. 29) is DENIED;

2.      Swartz's Motion for Default Judgment (Doc. 41) is DENIED;

3.      WGII's Motion for Leave to File a Response to Plaintiff's Surreply (Doc. 46) is GRANTED;

4.      Swartz's Motion to Dismiss All Defendant Motions for Non-Conformance to D.N.M.L.R. 7.4 (Doc. 49) is DENIED;

5.      The United States' request for dismissal contained in Doc. 42 is DENIED;

6.      Swartz shall have ten days from the filing of this order (i) to amend his complaint to show the proper parties in conformance with § 3730(b)(1); (ii) to amend his complaint to include specific allegations in separate counts against specific individuals and to request specific relief other than that based on *qui tam* claims, if any; and (iii) to file the amended complaint under seal and serve it and all evidence and information in his possession, along with an affidavit showing that all evidence and information to support the *qui tam* claim that is in his possession has been submitted to the Government, on the Government;

7.      The Government shall have thirty days from the filing of the amended, sealed

complaint to elect whether to intervene in the *qui tam* action as a matter of right;

8.      Upon the unsealing of the amended complaint, if one is filed, and service upon the Defendants, the Defendants shall have the normal response times in which to file answers or further motions to dismiss.


_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**